UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | |
|---|---|
| HILLARD ELAM, <br><br> Plaintiff, <br><br> v. <br><br> THE STATE OF INDIANA, by and through the INDIANA DEPARTMENT OF CORRECTIONS and the WESTVILLE CORRECTIONAL FACILITY, CORIZON HEALTH, INC., DR. MICHAEL MITCHEFF, DR. ANDREW LIAW, D. CAMPBELL, RN, DEBBIE REEGER, and D. GOFFLIES, <br><br> Defendants. | CAUSE NO.: 2:15-CV-287-TLS |

**OPINION AND ORDER**

This matter comes before the Court on the Defendants' Motion for Summary Judgment [ECF No. 97] on certain claims in the Second Amended Complaint [ECF No. 69]. Plaintiff Hillard Elam timely responded to the Motion [ECF No. 102], and the Defendants timely replied [ECF No. 105]. For the reasons set forth below, the Court GRANTS summary judgment on the Plaintiff's § 1983 claim, relinquishes jurisdiction of the state law claims, and REMANDS this case to LaPorte Circuit Court.

**PROCEDURAL BACKGROUND**

The Defendants argue in their Reply that the Plaintiff failed to comply with Local Rules, and summary judgment should be granted on that basis. *See* Defs.' Reply 2–3, ECF No. 105. However, the Plaintiff's Affidavit [ECF No. 104], filed with his Response, serves much the same function and mimics what the Defendants themselves did to present their undisputed facts. *Cf.* App., ECF No. 99, *with* Aff., ECF No. 104. The Plaintiff has sufficiently presented his factual

contentions such that they will be considered. *See* Ind. L.R. 56-1(a) ("The brief supporting a summary-judgment motion *or the brief's appendix* must include a section labeled "Statement of Material Facts" that identifies the facts that the moving party contends are not genuinely disputed.") (emphasis added); *id.* 56-1(b)(2) ("The response brief *or its appendix* must include a section labeled 'Statement of Genuine Disputes' that identifies the material facts that the party contends are genuinely disputed so as to make a trial necessary.") (emphasis added); *see also Dr. Robert L. Meinders, D.C., Ltd. v. UnitedHealthcare, Inc.*, 800 F.3d 853, 858 (7th Cir. 2015) ("District courts are entitled to 'considerable discretion in interpreting and applying their local rules.'" (quoting *Cuevas v. United States*, 317 F.3d 751, 752 (7th Cir. 2003))). However, the Plaintiff has only presented facts related to one medical issue: his rash. The Defendants have provided undisputed facts related to the other medical issues presented in the Plaintiff's Second Amended Complaint as a basis for the Eighth Amendment claim, as well as legal argument supporting summary judgment in favor of the Defendants as to those medical issues. The Plaintiff has not contested these facts or conclusions, and it is not the Court's job to do so for him; the undisputed facts do not present a genuine issue of material fact, and so those factual theories do not present a § 1983 claim which survives summary judgment.[1] *Ormsby v. Nexus RVs, LLC*, No. 3:19-CV-626 DRL-MGG, 2020 WL 2041754, at *3 (N.D. Ind. Apr. 28, 2020) (citations omitted); *see also Strahan v. Bowen Ctr.*, 240 F. Supp. 3d 926, 936 (N.D. Ind. 2017).

**FACTUAL BACKGROUND**

The Plaintiff was incarcerated at the Indiana Department of Corrections, Westville Community Correction Facility ("Westville") from February 4, 2013, until August 7, 2013. *See*

---

[1] The undisputed facts establish that Defendant D. Gofflies, apparently Nurse Debra Goff-Ellis, only saw the Plaintiff in connection with his shoulder injury. *See* Affidavit of Debra Goff-Ellis, Ex. G, ECF No. 99-7. As that treatment is no longer at issue in the case, Defendant Goff-Ellis' conduct is also not at issue, and so will not be discussed.

Pl.'s Aff. ¶ 2, ECF No. 104. While incarcerated at Westville, he experienced what he believed to be a bite from an insect or other pest, which led to a painful rash on his finger and wrist. *Id.* at ¶ 3.

On March 11, 2013, he requested medical care for the problem, noting he believed an infection was responsible. *Id.*; *see also* Pl.'s Ex. A, Request for Healthcare, ECF No. 104-1. The Plaintiff was scheduled to be seen on March 14, 2013, but did not appear at the appointment. *See* App. to Defs.' Br. in Support of Mot. for Summ. J., Ex. H, Medical Records pgs. 201-400, 399-400, ECF No. 99-9. Upon a second request, *see* Pl.'s Ex. B, Request for Healthcare, ECF No. 104-2, the Plaintiff was seen on March 15, 2013 by Katherine Hutchinson, LPN. *See* Defs.' Ex. H, Medical Records pgs. 201-400, 387–90. At that time, the rash was assumed to be from Tegretol, one of the plaintiff's medications ("ever since i started taking the medication ive gotten this rash"), *id.* at 389; the Plaintiff was prescribed acetaminophen, and the doctor substituted Naprosyn for Tegretol, *id.* at 391.

On March 24, 2013, the Plaintiff again submitted a request for medical assistance with the rash. *See* Pl.'s Ex., Request for Healthcare, ECF No. 104-3. The Plaintiff was apparently not seen and was instead instructed to continue using the Temovate topical cream he had been prescribed in February. *Id.* The Plaintiff was seen several times over the next week or so for unrelated complaints; on April 3, 2013, Nurse Hutchinson noted an alteration in the Plaintiff's skin integrity, specifically a "pruritic, peeling, cracking of the skin; erythemic area with short well defined slightly raised border," but no evidence of infection and a history of psoriasis. *See* Defs.' Ex. H, Medical Records pgs. 201-400, 372. On April 5, 2013, the Plaintiff was seen by Defendant Andrew Liaw, MD, again for various unrelated complaints, *see generally* Defs.' Ex. H, Medical Records pgs. 201-400, 356-64; the Plaintiff noted in his next request regarding his

3

rash, on April 8, 2013, that the doctor "was going to schedule me for a shot for the rash." *See* Pl.'s Ex. D, Request for Healthcare, ECF No. 104-4. However, the medical staff, without seeing the Plaintiff, responded that no shot had been ordered. *Id.*

The Plaintiff's next request that notes the rash is April 11, 2013, *see* Pl.'s Ex. E, Request for Healthcare, ECF No. 104-5; the Plaintiff had an appointment on April 12, 2013, to substitute his wheelchair, but did not appear for the appointment, *see* Defs.' Ex. H, Medical Records pgs. 201-400, 351. The Plaintiff again submitted a request for medical attention on April 15, 2013, again mentioning the doctor ordering a shot. *See* Pl.'s Ex. F, Request for Healthcare, ECF No. 104-6. The medical staff again responded that no "shot" had been ordered, without seeing the Plaintiff, though he was seen on April 19, 2013, and signed the receipt for a new wheelchair. *Id.*; Defs.' Ex. H, Medical Records pgs. 201-400, 345. On April 20, 2013, the Plaintiff again submitted a request, *see* Pl.'s Ex. G, Request for Healthcare, ECF No. 104-7; on April 23, 2013, Diamond Campbell, RN, reviewed the request and noted the Plaintiff had been seen on April 22, 2013, about psoriasis, *see* Defs.' Ex. H, Medical Records pgs. 201-400, 338. On April 26, 2013, Dr. Andrew Liaw ordered the Plaintiff sent to urgent care and that, if normotensive and psoriatic plaques were present, he could be given a full dose of Solu-Medrol. *Id*. at 336.

On April 29, 2013, the Plaintiff again requested assistance with the rash; on May 2, 2013, medical staff[2] responded that the cream he had been using was reordered and to address the issue at his chronic care appointment. *See* Pl.'s Ex. H, Request for Healthcare, ECF No. 104-8. On May 3, 2013, the Plaintiff again requested medical attention, but directed it to Defendant Debby

---

[2] Technically, the Defendants state that Nurse Campbell made these notes. *See* Def.'s App. 18, ECF No. 99. However, while Nurse Campbell's Affidavit ¶ 4 does discuss additional notes, the records only support referral to nursing sick call (NSC). *See* Def.'s Ex. H, Medical Records pgs. 201-400, 229.

4

Reeger[3] on the basis of their conversation. *See* Pl.'s Ex. I, Request for Healthcare, ECF No. 104-9. Defendant Reeger documented their conversation and told the Plaintiff he could write again. *Id.* On May 6, 2013, the Plaintiff saw Barbara Brubaker, APN/NP; the notes document that a new medication for the psoriasis was ordered, and that Brubaker would check on the order for the last injection. *See* Defs.' Ex. H, Medical Records pgs. 201-400, 311. The rash was described as "maculopapular," with pruritic symptoms. *Id.* at 314. Its status was described as "unchanged." *Id.* On May 7, 2013, the Plaintiff received a Solu-Medrol injection to treat the rash. *Id.* at 303.

However, on May 11, 2013, the Plaintiff filed another request, noting that the rash was worse and that the nurse practitioner had told him to report if the shot did not help. *See* Pl.'s Ex. J, Request for Healthcare, ECF No. 104-10. Medical staff noted he had a pending appointment for his psoriasis with the provider and excused him from nursing sick call. *Id.* On May 16, 2013, the Plaintiff was again seen for the rash; Nurse Hutchinson again concluded the rash was psoriasis and noted the upcoming appointment, but the Plaintiff became agitated and was removed. *See* Defs.' Ex. H, Medical Records pgs. 201-400, 295. On May 17, 2013, the Plaintiff again submitted a request, regarding the rash; the medical staff responded that the issue had been addressed by the provider. *See* Pl.'s Ex. K, Request for Healthcare, ECF No. 104-10. The notes from the same day document that the Plaintiff should follow up with the provider because he was removed from nursing sick call for inappropriate behavior. *See* Defs.' Ex. H, Medical Records pgs. 201-400, 292.

On May 20, 2013, the Plaintiff submitted another request regarding his rash, *see* Pl.'s Ex. L, Request for Healthcare, ECF No. 104-12, and was seen by Lori Evans, RN. The notes document that the Plaintiff reported the rash developed after taking Tegretol, improved after he

---

[3] The Defendants' Brief spells Ms. Reeger's first name "Debby," *see, e.g.,* Br. at 17; the Second Amended Complaint spells her first name "Debbie."

stopped, and returned after he was started on Tegretol again. *See* Defs.' Ex. H, Medical Records pgs. 201-400, 287. The examination showed pustules, vesicles, or furuncles. *Id.* Tegretol was added to the Plaintiff's allergy list. *Id.* at 288. On May 23, 2013, the Plaintiff followed up at nursing sick call for his rash, which had improved. *Id.* at 275.

On May 30, 2013, the Plaintiff submitted another request, stating the rash had returned. *See* Pl.'s Ex. M, Request for Healthcare, ECF No. 104-13. On June 3, 2013, he was referred to nursing sick call and saw Heather McAllister, LPN; he reported that the rash was back after he ran out of the prednisone tabs. *See* Defs.' Ex. H, Medical Records pgs. 201-400, 263–66. He was prescribed Betamethasone for six weeks, a Medrol dose pack, and Benadryl. *See* Pl.'s Ex. M, Request for Healthcare, ECF No. 104-13. On June 11, 14, and 17, 2013, the Plaintiff submitted additional requests, indicating that his rash was returning after he finished the medications from earlier in June. *See* Pl.'s Exs. N–P, Requests for Healthcare, ECF Nos. 104-14–104-16. On June 19, 2013, the Plaintiff was seen by Dr. Andrew Liaw, who prescribed an antibiotic and prednisone, as well as renewing the Naprosyn. *See* Defs.' Ex. H, Medical Records pgs. 401-565, 545, ECF No. 99-10. On June 28, 2013, the Plaintiff submitted another request, indicating that, while the rash was gone from his right arm and hand, it remained on his left hand and requesting more medication, *see* Pl.'s Ex. Q, Request for Healthcare, ECF No. 104-17; he submitted another request on July 1, 2013, *see* Pl.'s Ex. R, Request for Healthcare, ECF No. 104-18, and was seen that day, *see* Defs.' Ex. H, Medical Records pgs. 201-400, 228. Dr. Liaw again prescribed the antibiotic and prednisone. *Id.*

The Plaintiff had an annual health screening on July 29, 2013. *See* Defs.' Ex. H, Medical Records pgs. 1-200, 173–86, ECF No. 99-8. The Plaintiff submitted a request for healthcare on August 1, 2013, again regarding his rash coming back after the medications were finished. *See*

6

Pl.'s Ex. S, Request for Healthcare, ECF No. 104-19. The Plaintiff was scheduled to see the chronic care clinic on August 2, 2013, but the provider called off that day. *See* Defs.' Ex. H, Medical Records pgs. 1-200, 170. He was rescheduled at the chronic care clinic for August 7, 2013, and for nursing sick call on August 11, 2013, but the Plaintiff was instead released on August 7, 2013, with a supply of the antibiotic and prednisone. *See* Defs.' Ex. H, Medical Records pgs. 1-200, 159, 162, 165, 168.

On August 7, 2013, the Plaintiff was transferred to Elkhart County Jail, where he was diagnosed with scabies. *See* Pl.'s Ex. T, Elkhart County Jail Screening, ECF No. 104-20. At that point, the Plaintiff's scabies was treated. *See* Pl.'s Aff. ¶ 7.

## LEGAL STANDARD

Summary judgment is warranted when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The nonmoving party must marshal and present the Court with evidence on which a reasonable jury could rely to find in his favor. *Goodman v. Nat'l Sec. Agency, Inc.*, 621 F.3d 651, 654 (7th Cir. 2010). A court must deny a motion for summary judgment when the nonmoving party presents admissible evidence that creates a genuine issue of material fact. *Luster v. Ill. Dep't of Corr.*, 652 F.3d 726, 731 (7th Cir. 2011) (citations omitted). A court's role in deciding a motion for summary judgment "is not to sift through the evidence, pondering the nuances and inconsistencies, and decide whom to believe. [A] court has one task and one task only: to decide, based on the evidence of record, whether there is any material dispute of fact that requires a trial." *Waldridge v. Am. Heochst Corp.*, 24 F.3d 918, 920 (7th Cir. 1994). Facts that are outcome determinative under the applicable law are material for summary judgment purposes. *Smith ex rel. Smith v. Severn*, 129 F.3d 419, 427 (7th Cir. 1997). Although a bare

contention that an issue of material fact exists is insufficient to create a factual dispute, a court must construe all facts in a light most favorable to the nonmoving party, view all reasonable inferences in that party's favor, *Bellaver v. Quanex Corp.*, 200 F.3d 485, 491–92 (7th Cir. 2000), and avoid "the temptation to decide which party's version of the facts is more likely true," *Payne v. Pauley*, 337 F.3d 767, 770 (7th Cir. 2003).

## ANALYSIS

### A. The Plaintiff's Eighth Amendment Deliberate Indifference Claim

"[D]eliberate indifference to serious medical needs of prisoners constitutes the 'unnecessary and wanton infliction of pain' proscribed by the Eighth Amendment." *Estelle v. Gamble*, 429 U.S. 97, 104 (1976) (quoting *Gregg v. Georgia*, 428 U.S. 153, 173 (1976)) (further citation omitted). To prevail on a deliberate indifference claim, a plaintiff must prove that he (1) suffered from an objectively serious medical condition to which (2) an individual defendant[4] was deliberately indifferent. *Petties v. Carter*, 836 F.3d 722, 728 (7th Cir. 2016) (en banc). For purposes of summary judgment, the Defendants do not dispute that the Plaintiff had serious medical needs. *See* Defs.' Br. 5, ECF No. 98. The Court must examine each individual

---

[4] In addition to the individual Defendants, the Plaintiff has sued "the State of Indiana, by and through the Department of Corrections," Westville itself, and Corizon Health, Inc. The Plaintiff's response on Summary Judgment does not articulate how these Defendants could, theoretically, be liable on the federal claims. The State of Indiana and Westville cannot be sued under § 1983. *See, e.g.*, *Mora v. Westville Corr. Facility*, Civ. No. 3:07-CV-259, 2008 WL 2906761, at *2 (N.D. Ind. July 24, 2008) (dismissing Westville as a Defendant because states and their agencies are not "persons" under § 1983 (citing *Will v. Mich. Dep't of State Police*, 491 U.S. 58 (1989))). The Plaintiff cites Corizon Health, Inc.'s policies in support, rather than contravention of, his claim, and so he does not appear to be arguing Corizon Health, Inc. is liable under *Monell*. *See Glisson v. Ind. Dep't of Corr.*, 849 F.3d 372, 378–79 (7th Cir. 2017) (en banc) ("[A] private corporation that has contracted to provide essential government services is subject to at least the same rules that apply to public entities." (discussing *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658 (1978))). While the Seventh Circuit has hypothesized that private corporations *may* be liable on a respondeat superior theory, *see Shields v. Ill. Dep't of Corr.*, 746 F.3d 782, 790–92 (7th Cir. 2014), the Plaintiff has not actually articulated such a theory against Corizon Health, Inc., and it would still require that an individual was deliberately indifferent.

Defendant's subjective state of mind to determine if he acted with deliberate indifference. *Petties*, 836 F.3d at 728 (citing *Vance v. Peters*, 97 F.3d 987, 992 (7th Cir. 1996)).

In making this inquiry, the Court must look to the totality of an inmate's care. *Id.* at 728–29 (citing *Cavalieri v. Shephard*, 321 F.3d 616, 625–26 (7th Cir. 2003)). This is a fact intensive analysis. There are instances in which a defendant's subjective state of mind is easily ascertainable, such as when a prison official intentionally interferes with prescribed treatment. *Estelle*, 429 U.S. at 104–05. Further, "[i]f a risk from a particular course of medical treatment (or lack thereof) is obvious enough, a factfinder can infer that a prison official knew about it and disregarded it." *Petties*, 836 F.3d at 729 (citing *Norfleet v. Webster*, 439 F.3d 392, 396 (7th Cir. 2006); *Cole v. Fromm*, 94 F.3d 254, 260 (7th Cir. 1996)). But if a layperson cannot readily understand the existence of an unnecessary medical risk, then "a medical professional's treatment decision must be 'such a substantial departure from accepted professional judgment, practice, or standards as to demonstrate that the person responsible did not base the decision on such a judgment.'" *Id.* (quoting *Cole*, 94 F.3d at 261–62).

This is because an absence of professional judgment, rather than a disagreement on the proper course of action, imposes liability for a deliberate indifference claim. *See, e.g.*, *Collignon v. Milwaukee County*, 163 F.3d 982, 989 (7th Cir. 1998) ("A plaintiff can show that the professional disregarded the need only if the professional's subjective response was so inadequate that it demonstrated an absence of professional judgment, that is, that no minimally competent professional would have so responded under those circumstances."); *Steele v. Choi*, 82 F.3d 175, 179 (7th Cir. 1996) (holding that evidence that some other medical professional would have chosen a different course of treatment was insufficient to establish a constitutional deliberate indifference claim). But "[i]t's clear that evidence of medical negligence is not enough

to prove deliberate indifference[,]" and even "a mistake in professional judgment cannot be deliberate indifference." *Whiting v. Wexford Health Sources, Inc.*, 839 F.3d 658, 662 (7th Cir. 2016) (citations omitted). This is because decisions that are actually based on medical judgment cannot be made with the requisite subjective intent that forms the basis of liability for deliberate indifference claims. *Id.* "Deliberate indifference is not medical malpractice; the Eighth Amendment does not codify common law torts." *Duckworth v. Ahmad*, 532 F.3d 675, 679 (7th Cir. 2008) (citing *Sherrod v. Lingle*, 223 F.3d 605, 610 (7th Cir. 2000)).

The Plaintiff rests his Eighth Amendment case on the premise that, because no provider diagnosed and then treated scabies in the 19 times the Plaintiff complained about the rash, despite the "directive of the Scabies Protocol," a reasonable fact finder could "conclude that [the Plaintiff's] providers consciously disregarded his condition." *See* Pl.'s Br. 3, 5, ECF No. 103.

The premise is faulty for several reasons. First, while the Defendants do not contest the document put forward by the Plaintiff, the Scabies Protocol in the record is dated October 2014, *see* Pl.'s App. Item 3 ("Scabies Protocol"), ECF No. 103-3; but the Plaintiff was released from Westville on August 7, 2013. The document does reference a "previous 2011 version," apparently the basis for the Plaintiff's statement that the Federal Bureau of Prisons has had such a protocol "since at least 2011." *Compare* Pl.'s Br. 3, *with* Scabies Protocol 2. However, the immediately preceding sentence supplies that "[t]he protocol for scabies has been substantially rewritten." The Plaintiff has presented no other evidence that the Scabies Protocol applied during the relevant period.

Second, even if it were clear the document applied, it does not establish that any individual actor departed from accepted medical practice. *See Whiting*, 839 F.3d at 663 (affirming a grant of summary judgment because "the decision was not so obviously wrong that

10

a layperson could draw the required inference about the doctor's state of mind without expert testimony," which the Plaintiff had not presented). The Scabies Protocol describes the presentation of scabies as, "typical lesions are symmetrically distributed on the hands . . . wrists, elbows, waist, legs, and feet. In men, lesions are frequently around the belt line, thigh, and external genitalia." *See* Scabies Protocol at 1. The Plaintiff only ever mentions the rash on his hands and arms, and it was not symmetrical. *See, e.g.,* Ex. Q, Request for Healthcare, ECF No. 104-17 ("Red-itch-rash about gone on R-hand/arm L-hand still have"). Thus, the Scabies Protocol does not provide enough information for a layperson to determine, without more, that the Plaintiff so obviously had scabies that the providers' failure to treat it can be inferred as deliberate indifference.

Finally, contrary to the Plaintiff's contention, *see* Pl.'s Br. 3 (citing Scabies Protocol Section 4), the document does not indicate that scabies should be a presumed diagnosis in any situation, only that it should be presumptively treated even if it is not a confirmed diagnosis. Thus, the Plaintiff has not identified any portion of the Scabies Protocol with which the individual Defendants failed to comply. And even if the individual Defendants had somehow failed to comply with a protocol, such failures do not automatically give rise to Eighth Amendment claims. *See, e.g.*, *Gayton v. McCoy*, 593 F.3d 610, 622–24 (7th Cir. 2010) (affirming a grant of summary judgment in favor of Nurse Radcliff, despite the nurse's failure to follow a protocol to contact a doctor when an inmate complained of chest pains, because of Nurse Radcliff's specific actions of ensuring the inmate received medications and making a notation in the chart that the inmate be seen by a doctor if the medications did not arrive, but reversing the grant of summary judgment in favor of Nurse Hibbert partly for her failure to follow prison protocol); *see also Scott v. Edinburg*, 346 F.3d 752, 760 (7th Cir. 2003)

11

("However, 42 U.S.C. § 1983 protects plaintiffs from constitutional violations, not violations of state laws or, in this case, departmental regulations and police practices.") (citations omitted).

A reasonable factfinder, looking at the totality of the Plaintiff's care, could not conclude any provider[5] was deliberately indifferent to the Plaintiff's condition. A medical provider examined the Plaintiff for his rash no fewer than eleven times between his first complaint on March 11, 2013, and his last visit on July 29, 2013. The Plaintiff reported the rash as intermittent, and responsive to treatment;[6] treatment was provided in response to the Plaintiff's requests. In addition, the Plaintiff was seen many times for multiple other medical issues during this same period. Nothing in the record or presented by the Plaintiff would allow a factfinder to conclude that the treatments were not based on medical judgment. Summary judgment is granted on the Plaintiff's § 1983 claim against all defendants.

**B.     The Plaintiff's State Law Claims**

"Federal courts are courts of limited jurisdiction." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). "When all federal claims have been dismissed prior to trial, the principle of comity encourages federal courts to relinquish supplemental jurisdiction pursuant to § 1367(c)(3)." *Hansen v. Bd. of Trs. of Hamilton Se. Sch. Corp.*, 551 F.3d 599, 607 (7th Cir.

---

[5] While not relevant to the outcome of the case, the Plaintiff did not distinguish among the different Defendants' supposed deliberate indifference: Nurse Campbell, Dr. Liaw, and Dr. Mitcheff only saw the Plaintiff a couple of times each, and Defendant Reeger is the administrator of medical records, not a medical provider. Section 1983 "liability depends on each defendant's knowledge and actions, not on the knowledge or actions of persons they supervise." *Burks v. Raemisch*, 555 F.3d 592, 594 (7th Cir. 2009). "[P]ublic employees are responsible for their own misdeeds but not for anyone else's." *Id.* at 596.

[6] The Plaintiff's brief states that the Plaintiff's rash was "non responsive [sic] for treatment," Pl.'s Br. at 3, that "treatments . . . were clearly not working," *id.* at 4, and that "the treatment that had been provided was ineffective," *id.* at 5. However, as detailed in the Factual Background, the Plaintiff actually reported that the rash responded to treatment but returned when the treatment was exhausted. While "[i]t is true that continuing the same treatment despite no results can constitute indifferent treatment," *Wilson v. Adams*, 901 F.3d 816, 821 (7th Cir. 2018) (citing *Kelley v. McGinnis*, 899 F.2d 612, 616 (7th Cir. 1990)), such is not the Plaintiff's case.

2008). Although the decision to exercise supplemental jurisdiction is discretionary, "there is a general presumption that the court will relinquish supplemental jurisdiction . . . ." *Rivera v. Allstate Ins. Co.*, 913 F.3d 603, 618 (7th Cir. 2018) (citing *RWJ Mgmt. Co., Inc. v. BP Prods. N. Am., Inc.*, 672 F.3d 476, 479–80 (7th Cir. 2012)). "The presumption is rebuttable, but it should not be lightly abandoned, as it is based on a legitimate and substantial concern with minimizing federal intrusion into areas of purely state law." *RWJ Mgmt. Co., Inc.*, 672 F.3d at 479 (internal quotation marks and citation omitted).

Neither party has put forward an argument for exercising supplemental jurisdiction.[7] As the Court has not engaged in any meaningful review of the merits of the state law claims and has not otherwise committed substantial judicial resources to them, declining to exercise jurisdiction is proper. *See Davis v. Cook County*, 534 F.3d 650, 654 (7th Cir. 2008) ("[T]he district court disposed of the federal claims on summary judgment, and so 'substantial judicial resources' have not yet been committed to the case."). Further, the Plaintiff has not fully briefed his state law claim, and so there will not be a substantial duplication of effort if this matter is refiled in state court. *Cf. Tyler v. Trs. of Purdue Univ.*, 834 F. Supp. 2d 830, 846 (N.D. Ind. 2011) ("Here, both parties have briefed Tyler's state law claims, and this Court is intimately familiar with the details of the case. Requiring the state court to address these claims would cause a substantial duplication of effort.").

Finally, the Defendants' argument against the Plaintiff's medical malpractice claim turns on interpretation of Indiana law. The medical provider Defendants argue that, as the Plaintiff has not presented expert testimony, his claims of medical malpractice must fail, *see* Defs.' Br. 25–

---

[7] While the Defendants have briefed arguments for dismissal of the state law claim for medical malpractice, Corizon Health Inc. has not moved or argued for a grant of summary judgment on the contract claim against it, added as Count V in the Second Amended Complaint. *See* Op. & Order 4, ECF No. 68.

26; in response, the Plaintiff argues that his case falls into the exception whereby the failure to follow the standard of care is so obvious that a layman can make the determination and an expert witness is not necessary, *see* Pl.'s Br. 3–4. Whether expert testimony is required, in a negligence action under Indiana medical malpractice, is a state law question distinct from the questions considered for the Eighth Amendment claim, which required more than negligence. *Compare St. Mary's Ohio Valley Heart Care, LLC v. Smith*, 112 N.E.3d 1144, 1150 (Ind. Ct. App. 2018) ("[T]he doctrine of *res ipsa loquitur* is a limited exception to the general rule that the mere fact of injury will not create an inference of negligence."), *with Minix v. Canarecci*, 597 F.3d 824, 831–32 (7th Cir. 2010) ("[N]egligence . . . is insufficient . . . to avoid summary judgment on [a] deliberate indifference claim.") (citation omitted). Thus, principles of federalism and judicial efficiency indicate that this Court should not exercise supplemental jurisdiction over the remaining claim. *See Huffman v. Hains*, 865 F.2d 920, 923 (7th Cir. 1989) ("[R]espect for the state's interest in applying its own law, along with the state court's greater expertise in applying state law, [are] paramount concerns."). The Court declines to exercise supplemental jurisdiction over the Plaintiff's state law claims.

## CONCLUSION

For the reasons stated above, the Defendants' Motion for Summary Judgment [ECF No. 94] is GRANTED in part and DENIED in part. The Court GRANTS summary judgment in favor of all Defendants on the Plaintiff's federal claims against them. As to any federal claims, the Clerk of Court is DIRECTED to enter judgment in favor of the Defendants and against the Plaintiff. The Court DECLINES to exercise supplemental jurisdiction over the Plaintiff's state law claims against the Defendants, and those claims are REMANDED to LaPorte Circuit Court.

SO ORDERED on December 21, 2020.

                                        s/ Theresa L. Springmann
                                        JUDGE THERESA L. SPRINGMANN
                                        UNITED STATES DISTRICT COURT